Ekren v. K&E Real Estate Invs., LLC, 2015 NCBC 107.

STATE OF NORTH CAROLINA

IREDELL COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
12 CVS 508

LAVONNE R. EKREN,

        Plaintiff,

v.

K&E REAL ESTATE INVESTMENTS,
LLC, and PAUL A. KONRADY,
Individually,

        Defendants.

**ORDER AND OPINION APPROVING
RECEIVER'S FINAL REPORT AND
MOTION FOR APPROVAL OF
COMMISION**

*Eisele Ashburn Greene & Chapman, PA, by Douglas G. Eisele, for
Plaintiff Lavonne R. Ekren*

*Knox, Brotherton, Knox & Godfrey, by Lisa G. Godfrey, for Defendants
K&E Real Estate Investments, LLC and Paul A. Konrady, Individually*

*G. Martin Hunter, Receiver for K&E Real Estate Investments, LLC*

Bledsoe, Judge.

{1}    **THIS MATTER** is before the Court upon G. Martin Hunter's (the "Receiver") Final Report of Receiver and Motion for Approval of Receiver's Commission (the "Motion") as the court-appointed Receiver for Defendant K&E Real Estate Investments, LLC ("K&E," the "Receivership," or the "Receivership Estate"). The Motion seeks Court approval of the Receiver's Final Report, the Receiver's rejection of the claims of North Carolina's Realty, Inc. ("NC Realty") and Defendant Paul A. Konrady ("Konrady"), the Receiver's proposal for payment of K&E's 2015 taxes, the Receiver's request for commission, and the Receiver's request to make final distributions of K&E's assets to Plaintiff Lavonne R. Ekren ("Ekren" or "Plaintiff") and Konrady.

{2}    The Receiver filed the Motion on July 30, 2015, together with a brief in support of the Motion. Plaintiff filed a response consenting to the Receiver's Motion, and Defendant Konrady filed two responses and an affidavit objecting to the Receiver's Motion, in part. The Court held a hearing on the Motion on

November 12, 2015. The Receiver, counsel for Plaintiff and Konrady, and Konrady were in attendance at the hearing.

<u>The Receiver's Request for Commission</u>

{3}     The Receiver seeks Court approval for payment to the Receiver of a commission of five percent of the receipts received by the Receivership Estate between September 1, 2014 and July 30, 2015, the payment to be made from the cash assets of the Receivership Estate. Pursuant to N.C. Gen. Stat. § 1-507.9, "the court shall allow a reasonable compensation to the receiver for his services, not to exceed five percent upon receipts and disbursements, and the costs and expenses of administration . . . ." N.C. Gen. Stat. § 1-507.9 (2013).[1] It is undisputed that the gross receipts of the Receivership Estate between September 1, 2014 and July 30, 2015 were $238,867.97. The Receiver seeks five percent of this amount, which equals $11,943.40.

{4}     Defendant Konrady contends that the Receiver's request is excessive, both because the Receiver has miscalculated his commission by double-counting certain receipts, and because the Receiver has not done sufficient work to justify the compensation requested in the circumstances here. The Court finds Konrady's arguments without merit.

{5}     First, as to the Receiver's commission calculation, Konrady contends that the Receiver erred by calculating his commission based on gross receipts during the applicable period rather than, as he had in his two prior commission requests, based on net receipts (i.e. receipts after deducting for mortgages, real estate commissions and closing costs). N.C. Gen. Stat. § 1-507.9, however, does not require that commission be paid on net receipts, and the Court does not find that the Receiver's decision to seek commission based on net receipts in his first two applications

---

[1] The Court notes that N.C. Gen. Stat. § 1-507.9 governs the compensation for receivers of corporations, and that K&E is a limited liability company. However, in the Order appointing the Receiver, this Court (Murphy J.) specifically ordered that the Receiver would be paid pursuant to N.C. Gen. Stat. § 1-507.9. *Ekren v. K&E Real Estate Inv., LLC*, No. 12 CVS 508 (N.C. Super. Ct. Aug. 8, 2012) (order appointing receiver). The Receiver was thereafter paid pursuant to N.C. Gen. Stat. § 1-507.9 in connection with his two prior applications for commission. The Court, therefore, elects, in its discretion, to apply N.C. Gen. Stat. § 1-507.9 in considering the Receiver's Motion.

precludes his request to be paid on gross receipts in the current Motion. Compensation awarded under N.C. Gen. Stat. § 1-507.9 must be reasonable, and the Receiver is certainly permitted to contend that reasonable compensation under the circumstances existing during a particular period should be based on net receipts while reasonable compensation under the circumstances existing in a different period should be based on gross receipts. Konrady's "miscalculation" argument therefore fails.

{6}     Next, as to Konrady's contention that the Receiver's request is excessive, Konrady argues that the Receiver has already been paid over $60,000 in receiver's fees, attorneys' fees, and costs and contends that the Receiver did not perform sufficient work in the applicable period to warrant additional compensation. The Court disagrees.

{7}     The Receiver attached his computerized time records to the Motion showing that he has spent 36.5 hours over the past year exercising his duties as Receiver. The Receiver's time records set forth in great detail the numerous and varied actions the Receiver took to manage the Receivership Estate and to sell the Receivership Estate's last two real estate parcels after September 1, 2014. Based on the evidence of record, the Court finds that the actions the Receiver took, and the time the Receiver spent in furtherance of his duties under his appointment, were reasonable and appropriate in the circumstances.

{8}     Konrady also appears to suggest that the Receiver's commission should be reduced because, in Konrady's view, this action was "motivated strictly by [Plaintiff's] spite" and because the Receiver's fees were unnecessary in light of Konrady's safekeeping of K&E's assets. Neither contention is persuasive. First, having accepted court appointment, the Receiver is entitled to receive reasonable compensation for his services under N.C. Gen. Stat. § 1-507.9 regardless of who or what caused the conditions necessitating the Receivership. The Receiver's compensation should not be dependent upon the wisdom of his appointment. In addition, Konrady's complaint that the Receivership was unnecessary carries no weight. Konrady continues to ignore that, regardless of the conduct that caused

him to conclude that he needed to transfer K&E's assets to himself, it was that transfer – made without any support under North Carolina law – and his decision to forego his available legal remedies in a court of law in favor of extra-legal self-help, that precipitated Plaintiff's action and required the appointment of the Receiver.

{9}    In sum, the Court concludes, based upon a consideration of the entire record before the Court, that the Receiver's requested commission is fair and reasonable compensation for his services between September 1, 2014 and July 30, 2015, and should be approved.  Accordingly, pursuant to N.C. Gen. Stat. § 1-507.9, the Court, in the exercise of its discretion, hereby **GRANTS** the Receiver's Motion and **APPROVES** a commission payment in the amount of $11,943.40 to be paid to the Receiver out the assets of the Receivership Estate.[2]

Claims against the Receivership Estate

{10}    The Receiver also seeks Court approval of his rejection of two claims against the Receivership Estate.

{11}    The first claim was asserted by NC Realty concerning an outstanding invoice to K&E allegedly due since June 10, 2011 for $6,000.00 for marketing and prep time in connection with the sale of one of K&E's properties.  Although NC Realty raised this claim to the Receiver on June 13, 2013, NC Realty has not brought an action against K&E for non-payment at any time.[3]  The Receiver contends that any claim NC Realty can bring to collect on this alleged debt is now barred by the three-year statute of limitations under N.C. Gen. Stat. § 1-52(1).  The Court agrees and concludes that the Receiver properly rejected NC Realty's claim against the Receivership Estate.

---

[2] The Receiver did not seek recovery of attorneys' fees in the Motion and advised at the hearing that the Motion sets forth his final application for compensation for his services as either Receiver or as counsel for the Receiver in this matter.

[3] The Receiver advised at the hearing that he had notified NC Realty through its owner, Rick Christenberry, of the Receiver's objection to the claim but did not receive any response from Mr. Christenberry.  NC Realty has not filed an objection to the Receiver's rejection of NC Realty's claim with the Court.

{12}     The second claim was asserted by Defendant Konrady through an invoice sent by "Paul Konrady Consulting" to the Receiver dated February 4, 2015 in the amount of $24,000.00 for alleged "financial record keeping of on-going operations, preparation of year-end financial information for tax reporting purposes, and financial reporting service as needed for ongoing operations of [K&E]" from 2011 through 2014. The evidence of record is undisputed that neither K&E nor the Receiver ever entered into a contract with Konrady or Paul Konrady Consulting for such services or requested that Konrady perform such services. Konrady contends that a contract or request was not needed, however, under the express terms of the Operating Agreement. Specifically, Konrady argues that Section 5.5 of the Operating Agreement, which states that a member may charge his "regular fees for any activity associated with the management of the corporation so long as the activity is of the type that the member usually provides to its clients," requires the Receiver to recognize his claim because the fees he seeks are for "activity of the type that he usually provides to [his] clients."[4] The Court disagrees.

{13}     First, by Konrady's own admission, he provided the alleged services to K&E without charge "for many years" and avers that he "began charging the Company for [his] services" only after Plaintiff began engaging in conduct he viewed as detrimental to K&E. Konrady has provided no evidence, however, that (i) he ever told Plaintiff that he had begun to charge K&E for his services at any time, (ii) he ever submitted an invoice to K&E for his services prior to the institution of the Receivership, (iii) K&E ever paid him for his services at any time, or (iv) Plaintiff or any other person was aware that he was charging K&E for his services. Accordingly, Konrady's claim – supported solely by his September 1, 2015 affidavit – appears to reflect nothing more than a long-after-the-fact decision to charge for

---

[4] Konrady asserts in his brief, and stated again at the hearing, that his claim is based solely on the Operating Agreement as "a specific written agreement which allows Mr. Konrady to charge for his services in this case" and "is not [a claim] in quantum meruit." As such, the Receiver's contention that Konrady's claim should be rejected based on the equitable doctrine of unclean hands is misplaced. *See*, *e.g.*, *Guessford v. Pa. Nat'l Mut. Cas. Ins. Co.*, 918 F. Supp. 2d 453, 469 (M.D.N.C. 2013) ("Under North Carolina law, the defense of unclean hands is only applicable when the plaintiff seeks an equitable remedy.") (citations and quotations omitted).

his alleged services in an effort to obtain a greater share of the final distribution of the Receivership Estate's remaining assets. Even if the Court were to assume that Section 5.5 of the Operating Agreement permitted Konrady to receive payment for bookkeeping services, the Agreement does not permit Konrady to decide, unilaterally, months and years after the services were provided, to charge K&E for services that were rendered free of charge at the time they were offered and provided.

{14} In addition, the Order appointing the Receiver in August 2012 broadly authorized the Receiver to "take charge of the day-to-day administration of [K&E]" and did not subject the Receiver's authority to any purported right of Konrady to provide bookkeeping services under the Operating Agreement. It is undisputed based on the evidence of record before the Court that (i) the Receiver did not contract with Konrady to provide services, (ii) the Receiver did not authorize or request Konrady to provide any services, (iii) the Receiver did not agree to pay Konrady for any services, (iv) Konrady did not advise the Receiver that he intended to charge for his alleged services, and (v) Konrady did not tender an invoice for his alleged services until February 2015, almost 2½ years after the Receiver was appointed.

{15} Under these circumstances, the Court concludes, based on its consideration of the entire record before the Court, that the Receiver properly rejected Konrady's claim against the Receivership Estate.[5]

K&E's 2015 Taxes

{16} The Receiver has proposed that $7,000.00 of the Receivership Estate's assets be deposited into the IOLTA trust account of G. Martin Hunter Attorney at Law to be held for payment of final taxes due from the Receivership Estate. The Receiver further proposes that he be authorized to sign K&E's final 2015 tax returns. The Receiver also proposes that, in the event K&E's final tax liability is

---

[5] In light of the Court's approval of the Receiver's rejection of Konrady's claim, the Court declines to consider Plaintiff's additional contention that Section 5.5's exclusion of fees for activities that are considered "managing the Company" also bars Konrady's claim.

less than $7,000.00, the Receiver shall pay the amount less than $7,000.00 to Konrady, and in the event K&E's final tax liability is greater than $7,000.00, Plaintiff and Konrady shall pay the amount in excess of $7,000.00 to the Receiver in equal shares. Neither Plaintiff nor Konrady advanced any objection to the Receiver's proposal in their briefs on the Receiver's Motion, and counsel for each indicated their consent to the Receiver's proposal at the hearing. The Court finds the Receiver's proposal fair and reasonable under the circumstances and approves the proposal as set forth in this Order.

### Final Distributions

{17} The parties indicated at the hearing that, subject to their disagreement concerning the Receiver's rejection of Konrady's claim, they agree that the final distribution of the Receivership Estate's assets should be made as follows:

| | | |
|---|---|---|
| Beginning Balance | | $276,724.42 |
| Tax holdback | | ($7,000) |
| Receiver's Commission | | ($11,943.40) |
| Amount to be distributed | | $257,781.02 |
| 1. | To Konrady[6] | ($60,000.00) |
| 2. | To Plaintiff[7] | ($95,000.00) |
| | To Konrady | ($95,000.00) |
| 3. | To Konrady[8] | ($7,781.02) |

{18} The Court finds that the Receiver's proposed distribution is consistent with the terms of the Second Amendment and, in light of the Court's approval of the

---

[6] The parties and the Receiver agree that Konrady is to receive the first $60,000 of any distribution pursuant to paragraph 1(a) of the Second Amendment to Operating Agreement dated October 20, 2007 between Plaintiff and Konrady (the "Second Amendment").

[7] The parties and the Receiver agree that after payment of the first $60,000 under paragraph 1(a) of the Second Amendment, the next $190,000 of any distribution is to be paid equally between Plaintiff and Konrady in accordance with their respective membership interests in K&E pursuant to paragraph 1(b) of the Second Amendment.

[8] The parties and the Receiver agree that the next $45,000 in assets "shall be first distributed to Konrady or his successors as a preferred distribution" pursuant to paragraph 1(c) of the Second Amendment.

Receiver's rejection of Konrady's claim, approves the Receiver's proposed distribution of final proceeds as follows:

| | |
|---|---|
| Beginning Balance | $276,724.42 |
| Tax holdback | ($7,000.00) |
| Receiver's commission | ($11,943.40) |
| To Konrady | ($162,781.02) |
| To Plaintiff | ($95,000.00) |
| Total Payments | ($276,724.42) |

Conclusion

{19} **IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED** as follows:

a) The Receiver's Final Report is **APPROVED**.

b) The Receiver's rejection of the claims of NC Realty and Konrady is **APPROVED**.

c) The Receiver's proposal regarding the 2015 tax returns is **APPROVED** and (i) the Receiver shall be permitted to place $7,000.00 into the IOLTA general trust account of G. Martin Hunter Attorney at Law to be held for payment of final taxes, (ii) the Receiver is authorized to sign final 2015 tax returns for the Receivership Estate, (iii) in the event K&E's final 2015 tax liability is less than $7,000.00, the Receiver shall pay the amount less than $7,000.00 to Konrady, (iv) in the event K&E's tax liability is greater than $7,000.00, Plaintiff and Konrady shall pay the amount greater than $7,000.00 to the Receiver in equal shares, and (v) the Receiver shall be permitted to file a motion to compel contribution in this Court against either Plaintiff or Konrady should either fail to pay their portion of any tax liability in excess of $7,000.00.

d) The Receiver's request for commission is **APPROVED** and the Receiver is entitled to receive, and is authorized to pay, a

commission in the total amount of $11,943.40 from the assets of the Receivership Estate.

e) The Receiver's request for payment of a final distribution is **APPROVED** and the Receiver is authorized to pay Plaintiff the total amount of $95,000.00 and to pay Konrady the total amount of $162,781.02 as final distributions of the Receivership Estate's assets; provided, however, that payment under this paragraph 18(e) shall not affect the payments contemplated under paragraph 18(c) and further that the parties shall share equally the cost of any bank fees that the Receiver may incur prior to the payments required under this Order.

f) The Receiver shall notify the Court when K&E's 2015 tax returns have been filed, when the Receiver may be discharged, and when the case may be closed on the Court's docket. In the event the Court has not closed the case by February 1, 2016, the Receiver shall provide a written status report to the Court.

**SO ORDERED**, this the 12th day of November 2015.


/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases